UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES DEAN KENDRICK,**<br><br>Plaintiff,<br><br>v.<br><br>**DRUG ENFORCEMENT ADMINISTRATION,**<br><br>Defendant. | Case No. 21-cv-01624 (TNM) |

## MEMORANDUM OPINION

James Dean Kendrick submitted multiple FOIA requests to the Drug Enforcement Administration for records pertaining to him. The agency conducted several searches and released 28 pages, with some material redacted. Dissatisfied with that response, Kendrick filed this lawsuit.

Both parties now move for summary judgment. The Court holds that, on this record, some of DEA's searches were inadequate. But the Court also concludes that for the material already disclosed, the agency has properly invoked various FOIA exemptions. The Court will therefore grant in part and deny in part both motions.

**I.**

This FOIA case begins with a criminal conviction. In 2016, a federal court sentenced Kendrick to "life imprisonment plus 30 years" for his involvement in a drug ring. ECF No. 937, *United States v. Kendrick, et al.*, No. 6:10-cr-6096 (W.D.N.Y.). To substantiate alleged prosecutorial errors related to his conviction, Kendrick filed a FOIA request with the DEA. *See* Compl. at 2, ECF No. 1. He sought (1) his NADDIS report, which refers to "an electronic data index system" used by DEA to locate records, Decl. of Angela Hertel ¶ 6, ECF No. 14-5 (Hertel

Decl.); (2) his DEA investigative file; (3) DEA forms pertaining "directly or indirectly" to him; and (4) correspondence the DEA sent him at a New York county jail about the seizure of money at the time of his arrest, *see id.* ¶ 8.

DEA conducted multiple searches. It first queried the NADDIS database and found one investigative file associated with Kendrick, the paper copy of which had been destroyed by a field office. *See id.* ¶ 9. But the agency located an electronic copy in an "electronic file room." *Id.* ¶ 11. That file amounted to four pages. *See id.* ¶ 11. And because Kendrick had asked about a seizure, DEA sent a search request to its Asset Forfeiture Section (AFS), which located ten relevant pages. *See id.* ¶ 10. The agency released all 14 pages, with redactions on eight of them. *See id.* ¶ 12.

Kendrick appealed that response within the Department of Justice, DEA's parent agency. *See id.* ¶ 13. The Department remanded the request for more searches, and DEA sent a search request to its Office of Administration, Investigative Records Unit, to locate logs showing who had searched NADDIS for Kendrick's files. *See id.* ¶¶ 13–14. That Unit located two pages. *See id.* ¶ 15. DEA also located three pages comprising Kendrick's NADDIS report. *See id.* ¶ 16. The agency released those five pages with some redactions. *See id.* ¶¶ 15–16.

Kendrick then filed another FOIA request that largely duplicated his earlier one but also sought any documents about the destruction of his investigative file. *See id.* ¶ 17. DEA responded that "everything related to his NADDIS report, the investigative file, and any other investigative records" had been released previously. *Id.* ¶ 18. And as for the destruction of his file, DEA released both its search request to the field office and that office's response that it had destroyed the paper files. *See id.* ¶ 18. That release amounted to three pages, meaning the agency had released 22 pages in total, 14 with redactions. *See id.* ¶ 19. For those redactions,

DEA invoked FOIA Exemptions 6, 7(C), 7(E), and 7(F). *See id.*

Dissatisfied with the agency's response, Kendrick filed this suit, *pro se,* arguing that the DEA's searches were inadequate and that the agency improperly relied on the exemptions. *See generally* Compl. DEA moved for summary judgment, *see* Def's. MSJ, ECF No. 14, and Kendrick cross-moved for the same, *see* Pl.'s MSJ, ECF No. 19-1. After the motions became ripe, however, DEA conducted another search of the AFS and found six more responsive pages. *See* Attach to Supp. Memo., ECF No. 25-1. The agency released those pages with some redactions under the same exemptions as before.

The cross-motions are now ripe for decision.[1]

## II.

To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). FOIA requires "disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions, which are listed at 5 U.S.C. § 552(b)." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). To obtain summary judgment, the agency bears the burden to show the applicability of the claimed exemptions. *See ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). This burden does not shift even when the requester cross-moves for summary judgment. *See Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017). Courts construe FOIA exemptions narrowly, *see Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011), and review their applicability de novo, *see King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).

To meet its burden, an agency may rely on declarations describing the applicability of a FOIA exemption to information that the agency has withheld. *See Shapiro v. DOJ*, 893 F.3d

---

[1] The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

796, 799 (D.C. Cir. 2018).  Those declarations receive "a presumption of good faith."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The Court may grant summary judgment based solely on the agency's declarations if they are unimpeached by contrary record evidence or by evidence of the agency's bad faith.  *See Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017)*.*  Most FOIA cases resolve at this stage.  *See AARC v. CIA*, 317 F. Supp. 3d 394, 399 (D.D.C. 2018), *aff'd*, 781 Fed. App'x. 11 (D.C. Cir. 2019) (per curiam).

Kendrick proceeds *pro se*, so the Court "liberally construe[s]" his filings.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That accommodation does not, however, allow him "to ignore the Federal Rules of Civil Procedure."  *Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020); *Raven v. Sajet,* 334 F. Supp. 3d 22, 28 (D.D.C. 2018) (noting that for *pro* se plaintiffs, "the ultimate standard remains the same").  He still must show that a genuine issue of material fact exists as to whether the agency has inappropriately withheld records.  *See* Fed. R. Civ. P. 56(a).

### III.

Kendrick challenges the adequacy of DEA's searches and its invocation of FOIA exemptions.  *See generally* Pl.'s Stmt. of Undisputed Facts and Stmt. of Genuine Issues, ECF No. 19-3.  The Court first analyzes the searches and then the exemptions.

### A.

First, the searches.  The adequacy of a search does not turn on "whether there might be" more uncovered documents.  *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996).  A search instead is adequate if the agency shows that its search method "was reasonably calculated to uncover all relevant documents."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency can carry its burden through affidavits "setting forth the search terms and the type of search performed[ ] and averring that all files likely to contain responsive materials . . . were

searched[.]" *Id.* Any information about the agency's search must be "specific enough to enable [plaintiffs] to challenge the procedures utilized." *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Once the agency has provided the necessary detail, the plaintiff must produce "countervailing evidence" showing a genuine dispute of material fact about the search's adequacy. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314–16 (D.C. Cir. 2003) (cleaned up). Above all, "[i]f the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Kowalczyk*, 73 F.3d at 388 (cleaned up).

Across the two requests, DEA searched NADDIS, the Asset Forfeiture Section, the unnamed "electronic file room," Hertel Decl. ¶ 11, and the agency's Office of Administration, Investigative Records Unit. Kendrick focuses most, however, on the destruction of his paper investigative file. DEA sent a search request for that file to the field office where the matter originated. *See id.* ¶ 9. Recall, however, that the office said it had destroyed the paper copies per the agency's Record Management Schedule. *See id.* Kendrick says otherwise. In his Complaint and his appeals within DOJ, he argued that DEA never destroys such files. *See* Compl. ¶ 25(6). But he includes no evidence supporting this assertion, relying instead on conclusory statements to rebut the agency's declaration on this point. Speculation is not enough to overcome the good-faith presumption afforded that declaration. *Accord Eddington v. DOD*, 35 F.4th 833, 839 (D.C. Cir. 2022).

More, Kendrick has not refuted or otherwise questioned DEA's later search of the electronic file room that yielded "a complete electronic version" of the investigative file. Hertel Decl. ¶ 11. So even if DEA improperly destroyed the paper files, it has provided those files in

electronic form, complying with its duty to "search for the [requested] records in electronic form or format." 5 U.S.C. § 552(a)(3)(C). Because Kendrick does not refute that statement,[2] the Court credits it and rejects his assertion that a genuine issue of material fact remains about the destruction of his paper file.

That leaves the other three searches. Kendrick never clearly states which of these he challenges, instead asserting broadly that the agency never met its "duty to search for and locate records and documents." Pl.'s MSJ at 3, ECF No. 20; *see also* Pl.'s Reply at 7 (there is "a genuine issue of material fact . . . as to whether the DEA has conducted a reasonable search for responsive records").[3] Guided by the instruction to construe *pro se* filings broadly, *see Erickson*, 551 U.S. at 94, the Court assumes that Kendrick challenges the adequacy of all other searches. The Court takes them in turn.

First, the search of NADDIS. When queried, that system allows DEA to locate any "intelligence and investigative records generated across all DEA offices." Hertel Decl. ¶ 7. The agency searches NADDIS through certain terms like a person's "name, Social Security number, or date of birth." *Id.* ¶ 6. NADDIS therefore is a reasonable place to search for documents about Kendrick. And the agency did so "using [Kendrick]'s name." *Id.* ¶ 9. Because the agency searched a database likely to have responsive records and testifies that it used an appropriate search term, that search of NADDIS was adequate.

Not so for the searches of AFS and the Office of Administration. To begin with, the

---

[2] At most, Kendrick challenges the knowledge of Angela Hertel, the agency's declarant. *See* Pl.'s Reply at 1, ECF No. 24. His criticisms go nowhere. Hertel "oversee[s] the processing" of FOIA requests and is therefore familiar with the agency's "policies and practices." Hertel Decl. ¶ 2. Thus, she "has a general familiarity with the responsive records and procedures used to identify those records" and is an adequate declarant. *Barnard v. DHS*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008).

[3] All page citations refer to the page numbers generated by the Court's CM/ECF system.

6

Court agrees with the agency that, because Kendrick sought records about a seizure, AFS "was an appropriate office to search." *Id.* ¶ 10. But DEA says nothing more about how it conducted that search. It says that AFS used Kendrick's "name" to locate ten pages, but not how it used his name to find those ten pages. DEA's declaration thus merely states the search's results without "information about its search strategies," *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), or about "how [AFS] searched within" its own files, *Aguiar*, 865 F.3d at 738. More, AFS unearthed more pages recently, creating "substantial doubt" as to the thoroughness of the initial AFS searches. *Kowalczyk*, 73 F.3d at 388. The Court therefore will grant Kendrick's crossmotion as to the AFS search.

Ditto the search of the Office of Administration. About this search, DEA says that it "sent a search request to the Office of Administration, Investigative Records Unit, to locate the NADDIS Access Logs. This search identified two (2) pages of records there were released in part via correspondence dated June 15, 2017." Hertel Decl. ¶ 15. That's all. Nothing about how the Office located the logs or how this search was conducted. Based on such a light record, the Court cannot determine whether this search was adequate. *See DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015). The Court thus will grant Kendrick's motion for summary judgment as to this search. *Accord Louise Trauma Ctr. v. DHS*, No. 20-cv-1128 (TNM), 2022 WL 1081097, at *4 (D.D.C. Apr. 11, 2022) (granting plaintiff summary judgment for search that agency did not properly describe).

## B.

The Court now turns to the exemptions asserted by DEA. Recall that the agency redacted information under FOIA Exemptions 6, 7(C), 7(E) and 7(F). The agency must show why a particular exemption applies. But that is not all. The agency must also "reasonably foresee[]

7

that disclosure" of the material "would harm an interest protected" by a FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). Agencies must articulate this foreseeable harm in a "focused and concrete" way. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021). But even without a sufficient explanation from the agency, the "context and purpose" of withheld information can support a finding of foreseeable harm. *Id*. at 372. And as this Court explained more fully in *Reporters Committee v. CBP*, agencies can more easily meet their foreseeable harm burden when invoking exemptions "for which the risk of harm through disclosure is more self-evident." 567 F. Supp. 3d 97, 120 (D.D.C. 2021).

With these principles in mind, the Court addresses DEA's reliance on the various exemptions.

1.

First, a clarification on the exemptions at issue. DEA invokes Exemption 6 and Exemption 7(C), *see Vaughn* Index (VI), ECF No. 14-4, which permit an agency to withhold information the disclosure of which would violate personal privacy, *see Reps. Comm. v. CBP*, 567 F. Supp. 3d at 125. Though similar, 7(C) "provides broader privacy protections" and "thus establishes a lower bar for withholding material." *CREW v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017). So when agencies rely on both Exemptions 6 and 7(C) for the same material, the Court need not "consider Exemption 6 separately[.]" *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). Here, DEA always invokes the two exemptions in tandem. *See* Hertel Decl. ¶ 31. The Court thus considers only Exemption 7(C).

With Exemption 6 out of the picture, only Exemption 7 remains. To justify nondisclosure under that Exemption, the withheld material must be compiled "for law enforcement purposes." *Shapiro v. DOJ*, 893 F.3d 796, 800 (D.C. Cir. 2018) (cleaned up). DEA

8

asserts that it gathered these records under its "law enforcement responsibility," Hertel Decl. ¶ 23, and as part of its "investigative authority" to enforce drug laws, *id.* ¶ 26. Kendrick does not say otherwise, so the Court considers only whether the information meets the conditions of Exemption 7's subparts. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).

### 2.

Under 7(C), DEA redacted the names and other identifying information of third-party individuals, including those of law enforcement personnel. *See* Hertel Decl. ¶ 31. That exemption covers law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "To determine whether an invasion of privacy is 'unwarranted,' courts balance the privacy interest against the public interest in disclosure, including any potential interest in airing governmental misconduct." *Prot. Democracy Project, Inc. v. NSA*, 10 F.4th 879, 889 (D.C. Cir. 2021).

The individuals have a more than cognizable privacy interest here. The D.C. Circuit has "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, informants," *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003), and "federal government personnel," *CREW*, 854 F.3d at 681; *see also Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) ("As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information.").

The Court now "must balance the [substantial] privacy interests involved against the public interest in disclosure." *SafeCard Servs., Inc.*, 926 F.2d at 1205. Kendrick bears the burden to show that interest. *See NARA v. Favish*, 541 U.S. 157, 172 (2004). And the "only

relevant public interest" in the balancing analysis is "the extent to which disclosure . . . would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *EPIC v. DOJ*, 18 F.4th 712, 720–21 (D.C. Cir. 2021) (cleaned up).

Kendrick suggests no such interest. He says instead that "he has a personal interest in obtaining the withheld documents and information . . . to help him fight his criminal case." Pl.'s Reply at 3. That is indeed a weighty personal interest. But such a "personal stake in the release of the [redacted] information is irrelevant to the balancing" required by 7(C). *Roth*, 642 F.3d at 1177; *see also DOD v. FLRA*, 510 U.S. 487, 496 (1994) ("[E]xcept in certain cases involving claims of privilege, the identity of the requesting party" and his motives simply have "no bearing on the merits" of a FOIA claim.).

Kendrick makes three other assertions, none persuasive. *First*, he posits that the names "would not have been redacted if [the] documents were disclosed in discovery" and states that some names in fact were "released in the discovery of [his] 2000 State Drug Case." Pl.'s MSJ at 6. Perhaps, but the FOIA analysis is entirely separate from discovery. *See Stonehill v. IRS*, 558 F.3d 534, 538–39 (D.C. Cir. 2009); *cf. EPIC v. Nat.'l Sec. Comm'n on Artificial Intelligence*, 466 F. Supp. 3d 100, 104 (D.D.C. 2020) (finding agency subject to two separate disclosure regimes under FACA and FOIA).

Second, Kendrick questions the purported redaction of some DEA form numbers. *See* Pl.'s Opp'n at 6. DEA clarifies that the redacted initials of DEA law enforcement personnel "happen to be on top of the DEA form numbers," so the agency redacted those initials, not the form numbers. Def.'s Reply at 6, ECF No. 22. This is acceptable under FOIA, which permits nondisclosure of non-exempt material when "inextricably intertwined with exempt

10

portions." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (cleaned up).

Finally, Kendrick contends that the redacted names are in the public domain. *See* Pl.'s Reply at 4–6. An agency may not rely on a FOIA exemption to withhold information that is in the "public domain." *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992). The FOIA requester bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id*. (cleaned up).

Kendrick does nothing of the kind. He merely offers a long "list of witnesses [who] testified, for the Government" at his criminal trial "and who were also involved with the 2000 case and/or [i]nvestigation or work for the Rochester Police Department." Pl.'s Reply at 4–5. Because FOIA disclosures are to the public at large, *see Stonehill*, 558 F.3d at 538, individuals who testify at trial do not "waive the government's right to invoke" exemptions in FOIA litigation. *Davis*, 968 F.2d at 1281 (cleaned up). And recall that nondisclosure of the redacted names under Exemption 7(C) "remains justified where, as here, the public interest in disclosure is virtually nonexistent." *Id.* at 1282. More, the involvement of these names with his case is not what DEA withheld. The agency instead withheld their signatures and initials on forms and paperwork. Kendrick offers no reason to think those identifiers on these particular documents are already in the public domain.

This brings us to the foreseeable harm from disclosure. As this Court has noted, fulfilling the terms of exemptions outside Exemption 5 "goes a long way to meeting the foreseeable harm requirement." *Reps. Comm. v. CBP*, 567 F. Supp. 3d at 127. Given the lower burden, DEA says little but enough. It asserts that disclosure would cause invasions of privacy and would subject the named individuals to "harassment," "derogatory inferences," and "suspicion." Hertel Decl. ¶ 28. "These predicted results of disclosure are exactly what

Exemption 7(C) seeks to prevent[.]" *Ecol. Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65–66 (D.D.C. 2021). DEA has thus shown a risk of foreseeable harm from disclosure of this information and has therefore properly invoked Exemption 7(C).

**3.**

Next to Exemption 7(E), which protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or . . . guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). DEA invoked the exemption to withhold "sensitive case and file numbers, including NADDIS numbers and Geo-Drug Enforcement Program (G-DEP) identifiers." Hertel Decl. ¶ 33.

Under this exemption, the D.C. Circuit has "set a relatively low bar for the agency," requiring it only to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (cleaned up).

DEA has done so. It attests that disclosure of this information could identify "the investigative interest or priority given to such matters," thereby enabling suspects "to avoid detection" or "apprehension" by changing "their pattern of activity" or creating "alibis for suspected activities." Hertel Decl. ¶ 33. "DEA's redaction of G–DEP codes and NADDIS numbers from records responsive to FOIA requests has been routinely upheld for [similar] reasons[.]" *McKneely v. DOJ*, 132 F. Supp. 3d 44, 55 (D.D.C. 2015), *aff'd sub nom. McKneely v. DEA*, No. 15-5317, 2016 WL 3040985 (D.C. Cir. May 5, 2016). Kendrick does not dispute DEA's otherwise proper application of Exemption 7(E).

In sum, the agency has shown a self-evident risk of foreseeable harm. If disclosed, criminals could use these identifiers to change their activity and to evade detection. *See*

Hertel Decl. ¶ 33.  DEA has therefore met its burden on foreseeable harm.  The Court will grant summary judgment to the agency on its withholdings under Exemption 7(E).

### 4.

DEA also withheld information under Exemption 7(F), which protects information that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  But the agency relied on that exemption "always in conjunction with Exemption[] 7(C)."  Hertel Decl. ¶ 35.  Because the Court upheld the assertion of 7(C), it need not consider whether DEA properly invoked 7(F).  *See Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other.").

### 5.

To properly assert exemptions, DEA must also "demonstrate that all reasonably segregable material has been released."  *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002).  To meet this burden, the agency can rely on the combination of its declarations and *Vaughn* Index.  *See id.*  The agency is also "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  To overcome that presumption, Kendrick must provide a "quantum of evidence."  *Id.*

DEA admittedly does not say much on segregability, but it says just enough.  The agency reviewed "[a]ll responsive information" and withheld only that information that would implicate one of the claimed exemptions.  Hertel Decl. ¶ 38.  That is barely enough to carry DEA's burden.  And except for his argument about redacted file names, Kendrick marshals no evidence to overcome DEA's representations about segregability.  The Court holds that DEA

13

has fulfilled its segregability obligation.

## IV.

For these reasons, the Court will grant in part and deny in part both motions. A separate order will issue.

Dated: August 25, 2022                                        TREVOR N. McFADDEN, U.S.D.J.