UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES DEAN KENDRICK**, <br><br> Plaintiff, <br><br> v. <br><br> **DRUG ENFORCEMENT ADMINISTRATION**, <br><br> Defendant. | Case No. 21-cv-01624 (TNM) |

**MEMORANDUM OPINION**

James Dean Kendrick is serving a life sentence on drug-related convictions. Mem. Op., ECF No. 26, at 1. He has filed FOIA requests to find evidence that he believes the Drug Enforcement Administration retained about prosecutorial errors in his case. *Id.* After the DEA completed one round of record searches, Kendrick challenged them as inadequate. *Id.* This Court held that the DEA had not properly explained two of its four searches, though the rest of its searches and attendant redactions were appropriate. *Id.* at 4–7 (granting in part and denying in part cross-motions for summary judgment).

The DEA redid the searches. Def. Mot. Summ. J., ECF No. 42, at 4–5; Decl. of Joshua Delo, ECF No. 42-1, ¶¶ 6–12. Kendrick again says that the searches were insufficient. Pl. Cross Mot. Summ. J., ECF No. 52. Both parties have moved once more for summary judgment, and Kendrick also has moved to compel a *Vaughn* index. ECF Nos. 42, 52–53. The Court holds that, on this supplemental record, the DEA conducted reasonably adequate searches. More, because those searches produced no further records, the DEA need not compile a second *Vaughn* index justifying the same redactions for the same records it produced in the first round. The

DEA's motion for summary judgment will be granted and Kendrick's cross-motion for summary judgment and motion to compel will both be denied.

I.

The Court reviews an agency's decisions about releasing or withholding information de novo. *Hayden v. NSA*, 608 F.2d 1381, 1384 (D.C. Cir. 1979). To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Most FOIA cases resolve at summary judgment. *Machado Amadis v. Dep't of Justice,* 388 F. Supp. 3d 1, 10 (D.D.C. 2019), *aff'd sub nom, Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020).

The agency bears the burden to justify its disclosures or lack thereof. *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To proffer proof of searches, agencies may provide declarations and affidavits. *Hayden*, 608 F.2d at 1384, 1386. In general, they must receive "substantial weight." *Id.* at 1384. Yet the affidavits still must be "relatively detailed," "non-conclusory and submitted in good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up). They receive "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* at 1200. The Court may grant summary judgment based on the agency's declarations if they are unimpeached by contrary record evidence or by evidence of the agency's bad faith. *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017).

Leaving methods of proof aside, the Court decides whether a FOIA search is adequate based on how the agency conducted the search. The assessment is made "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The key question "is whether the

search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc.*, 926 F.2d at 1201.

Kendrick proceeds *pro se*, so the Court "liberally construe[s]" his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That accommodation does not, however, allow him "to ignore the Federal Rules of Civil Procedure." *Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020); *Raven v. Sajet*, 334 F. Supp. 3d 22, 28 (D.D.C. 2018) (noting that for *pro se* plaintiffs, "the ultimate standard remains the same"). He still must show that a genuine issue of material fact exists as to whether the agency has properly conducted the new searches. *See* Fed. R. Civ. P. 56(a).

The parties have cross-moved for summary judgment and Kendrick has moved to compel discovery. Kendrick's last summary-judgment reply was due well over a month ago, even though he requested and received two extensions from this Court. Min. Orders 12/23/2024, 1/13/2025. Given the age of the case and both parties' need for closure, the Court resolves the matter on the currently filed briefing. This Court has subject-matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## II.

After this Court ruled in part for Kendrick, the DEA went digging again. Two of the DEA's searches had been held inadequate: those conducted in the Asset Forfeiture Section and the Office of Administration. Mem. Op., ECF No. 26, at 4–7. Each has been redone.

### A.

The Asset Forfeiture Section has twice searched for records documenting the government's seizure of money from Kendrick upon arrest. *Id.* at 1–2. Originally, the Section's efforts were unsatisfactory because it had not disclosed how it conducted its search, only that it

"used Kendrick's 'name' to locate ten pages." *Id.* at 7. The Court required more detail. Mem. Op., ECF No. 26, at 6–7.

This time, the Section searched its Consolidated Asset Tracking System by Kendrick's name and located ten pages consisting of "a Declaration of Forfeiture, Notice Letters, Advertisement, and other accompanying correspondences." Delo Decl. ¶ 7. It also searched the Asset Tracking System by an "asset ID number . . . associated with $1,626 in cash that was seized" from Kendrick, producing six more pages. *Id.* All 16 of the pages already had been disclosed by the first round of searches. *Id.* Finally, the Section used the same ID number to search the new Asset Management Portal, which was created after the first search and contains "only paper files" that have not yet been destroyed. *Id.* As the Court discussed in its previous opinion, the DEA properly destroyed Kendrick's paper file according to its usual record management policy before the first search; this action did not affect its search adequacy because Kendrick received an electronic version of the same file. Mem. Op., ECF No. 26, at 5. The Asset Management System containing paper files that have not been destroyed, predictably, no longer had Kendrick's file in it during this second search. Delo Decl. ¶ 8.

**B.**

The Office of Administration also revamped its search. In its initial attempt, that office sought access logs to the Narcotics and Dangerous Drugs Information System (NADDIS), showing who had searched for Kendrick there. Mem. Op., ECF No. 26, at 7. But again, the office said "[n]othing about how [it] located the logs or how this search was conducted." *Id.*

Now, DEA requested that the same office re-run its search. The Office of Administration's Records and Information Management Section, which had originally done the search, redirected the DEA instead to the Information Systems Division because NADDIS

4

searches had recently moved there. Delo Decl. ¶ 9. The new division used Kendrick's NADDIS number to search for the access logs. *Id.* ¶ 10. This effort yielded the same three-page report that had already been released to the plaintiff with appropriate redactions. *Id.* (citing Hertel Decl. ¶ 16, ECF No. 14-5); Mem. Op., ECF No. 26, at 7–13 (approving of the agency's claimed exemptions supporting the redactions).

### III.

Kendrick argues that the DEA's searches remain inadequate. Primarily, he asserts that he has received records in another DEA FOIA case that this case's searches should have turned up. Pl. Cross-Mot. Summ. J., ECF No. 52, at 5–6. He points toward another case before this Court in which the DEA produced a seven-page document containing details about his seized money. *Id.* (citing *Kendrick v. U.S. Marshals Serv.*, No. 22-cv-1789). But in the case at bar, the DEA submitted a supplemental affidavit declaring that it already found and produced the same record during its first round of searches here. Supp. Decl of Angela Davis, ECF No. 55-1, ¶ 7 (citing Pl. Supp. Mem., ECF No. 25-1, at 4–9). The first two pages of the document admittedly appear different between the two cases, but they are just a summary of the internal document that the U.S. Marshals Service generated before submission in the other FOIA case; the core document is the same. *Compare* Pl. Supp. Mem., ECF No. 25-1 (showing Plaintiff submitting this core document to the Court in this case as an example of a document the DEA produced after the first round of searches) *with* Pl. Cross Mot. Summ. J., ECF No. 51-1, at 8–14 (showing Plaintiff submitting the same document from the other case with the two-page Marshal summary as an exhibit in this case purportedly showing that an undiscovered document remained). Kendrick's argument raises no genuine issue of material fact that the agency's searches failed to produce critical documents. More, his point is far from legally conclusive. The relevant standard asks

how well the agency searched, not "whether it actually uncovered every document extant." *SafeCard Servs., Inc.*, 926 F.2d at 1201.

Thus, the DEA wins summary judgment. The agency's declarations show that the searches "w[ere] reasonably calculated to uncover all potentially responsive records, and that all files likely to contain relevant documents were searched." Delo Decl. ¶ 12; *SafeCard Servs., Inc.*, 926 F.2d at 1201. The first division, the Asset Forfeiture Section, used both Kendrick's name and the appropriate asset ID to search two portals, the Consolidated Agency Tracking System and the Asset Management Portal. *See supra* Section II.A. Both yielded predictable results; the former showed all previously discovered records and the latter showed none because it only searches paper files. *Id.* These facts are based on agency affidavits that are entitled to a presumption of good faith, are "relatively detailed and non-conclusory," and are not contradicted by any evidence in the record or a showing of bad faith. *SafeCard Servs., Inc.*, 926 F.2d at 1201.

The same holds for the Office of Administration, though a new division conducted the search this time. That office used Kendrick's NADDIS number to search for access logs to his NADDIS report. *See supra* Section II.B. It only returned the same documents already disclosed. *Id.* As discussed, the agency's affidavits were "relatively detailed and non-conclusory" with no contradictions in the record. *SafeCard Servs., Inc.* at 1201.

The Court need not revisit its holdings on the propriety of the agency's redactions. Mem. Op., ECF No. 26, at 7–8, 11–12. These searches undisputedly did not produce any new documents and neither party claims that the agency has changed its redactions on the already-disclosed items. *See supra* Sections II–III. This Court already approved of the agency's exemptions. Specifically, it held that the agency carried its burden to show foreseeable harm if the redacted information were disclosed. Mem. Op., ECF No. 26, at 7–8, 11–12. And the Court

6

also held that the agency had shown that "all reasonably segregable material ha[d] been released." *Id.* at 13–14.  These questions need not be rehashed because the agency asserts no new redactions or exemptions.

## IV.

Kendrick raises further objections unrelated to the supplemental searches.  None are persuasive.

*First*, he rejects the DEA's *Vaughn* index, as he did during the first summary judgment proceeding.  Mem. Op., ECF No. 26, at 7–13.  This time he says that the released pages were not Bates-stamped.  Pl. Cross Mot. Summ. J., ECF No. 52, at 2–3.  But it is the function of the index that matters.  *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006).  The *Vaughn* index "need not be Bates-stamped or otherwise numbered," *Petrucelli v. Dep't of Justice*, 51 F. Supp. 3d 142, 163 (D.D.C. 2014), to permit the adversarial testing for which the index is purposed, *see Davidson v. United States*, 264 F. Supp. 3d 97, 109–10 (D.D.C. 2017).

*Second*, Kendrick reasserts his belief that the DEA "misled" the Court "by stating" that one file "was an adopted seizure file" rather than a criminal investigative file.  Pl. Cross-Mot. Summ. J., ECF No. 52, at 1–2, 3–4.  He claims that a criminal investigative file, unlike a seizure file, should never be destroyed.  *Id.*  He implies that the DEA's standard-record-destruction claim obscures some wrongdoing in destroying his paper record.  *Id.*  This issue already has been litigated during the first round of summary judgment briefing.  Mem. Op., ECF No. 26, at 5.  At that time, Kendrick complained that the DEA never destroyed such files, but he relied on "conclusory statements" that were "not enough to overcome the good-faith presumption" afforded the DEA's declarations about its standard record disposal policies.  *Id.*  More, this Court held that the parties agreed that Kendrick had received a "complete electronic version" of the

destroyed physical investigative file.  *Id.*

Now, Kendrick adds to the same argument an unidentified retired DEA agent's speculation that his file was not the type that DEA would usually destroy.  Pl. Cross. Mot. Summ. J., ECF No. 52, at 1–2, 3–4.  This third-hand hearsay adds little to Kendrick's previous assertions and, dispositively, does not contradict the fact that he already received his entire file.  Mem. Op., ECF No. 26, at 5; *see also Smith v. Hartogensis*, 541 F. Supp. 3d 1, 13 (D.D.C. 2021) (declining to consider plaintiff's own recounting of a third-party's statements for summary judgment purposes).

*Finally*, Kendrick seeks answers to his questions about his investigative file that was destroyed.  Pl. Cross-Mot. Summ. J., ECF No. 52, at 8–9; Pl. Supp. Mem., ECF No. 56 (titled "Interrogatories").  FOIA does not "require[ ] an agency to answer questions," *Hudgins v. Comm'r*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), or to "create a document that does not exist in order to satisfy a request," *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982).  "Discovery in a FOIA case is rare" and generally should be ordered "only where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search."  *Shapiro v. Dep't of Justice*, 40 F. 4th 609, 615 (D.C. Cir. 2022) (cleaned up).

When an agency's declaration fails to support summary judgment, "the appropriate remedy is usually to allow the agency to submit further affidavits rather than to order discovery."  *Id*.  The Court already did just that, and the DEA's reasonably detailed supplemental declaration receives the presumption of good faith.  *See* Mem. Op., ECF No. 26, at 5.  Kendrick has "offered no evidence of bad faith"—besides his already-rejected destruction and failure-to-find arguments—to merit discovery on the search method.  *Baker & Hostetler LLP v. Dep't of Com.*,

8

473 F.3d 312, 318 (D.C. Cir. 2006). Thus, his request for answers is denied.

**V.**

For the reasons explained above, the Court will grant DEA's renewed motion for summary judgment, deny Kendrick's cross-motion for summary judgment, and deny Kendrick's motion to compel. A separate order will issue.

_____

Dated: March 10, 2025                    TREVOR N. McFADDEN
United States District Judge